IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DAVID HAROLD ELSE, JR.,          §
CID #858684,                     §
    PETITIONER,              §
                                 §
V.                               §          NO. 3:02-CV-1188-P
                                 §
DOUGLAS DRETKE, DIRECTOR,        §
TEXAS DEPARTMENT OF CRIMINAL     §
JUSTICE, CORRECTIONAL            §
INSTITUTIONS DIVISION,           §
    RESPONDENT.              §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

    Pursuant to 28 U.S.C. § 636(b), and an order of the Court in implementation thereof, subject

cause has previously been referred to the United States Magistrate Judge.  The findings, conclusions,

and recommendation of the Magistrate Judge are as follows:

**I. BACKGROUND**

    **A.  <u>Nature of the Case</u>:**  This is a petition for writ of habeas corpus by a state prisoner under

28 U.S.C. § 2254.

    **B. <u>Parties</u>:**  Petitioner David Harold Else, Jr. is an inmate currently incarcerated in the Texas

Department of Criminal Justice, Correctional Institutions Division.  Respondent Douglas Dretke is

the Director of the Texas Department of Criminal Justice, Correctional Institutions Division.

    **C. <u>Factual and Procedural History</u>:**  Petitioner and Roderick Dean Earl were tried jointly

for the murder of Hector Cavazos.  Following is the state court of appeals' recitation of facts:

        Marcy Harris, a paramedic and firefighter with the Dallas Fire Department,
    testified that at about 1:30 a.m. on May 14, 1998, she was dispatched to a location
    in response to a call about an injured person.  When she arrived, she found Cavazos
    yelling for help.  Cavazos had been burned over ninety-five percent of his body.

Harris could also tell that Cavazos had been beaten up -- one of his eyes was swollen and he had facial abrasions. A bystander was removing a belt from around one of Cavazos's wrists. Cavazos told Harris that "some black guys" had poured gasoline on him and burned him. Harris and her partner took Cavazos to the hospital. Cavazos died later that day from his burn injuries.

Eric Watson, a friend of Cavazos's, was the State's key witness. Watson testified that on the afternoon of May 13th, Cavazos picked him up and they went to the Classic Auto Shop in Cavazos's car. At the shop, Cavazos got a call on his cell phone. When he got off the phone, he asked Watson if he wanted to make some quick money. Cavazos told Watson that if he rode around in a car with someone for about thirty minutes, Cavazos would pay him $1000. Watson knew it was a drug deal, but agreed to participate.

Kerry Cheatham soon arrived at the shop in a Cadillac. Cavazos told Watson to get in the car with Cheatham and "go get the other half." Watson assumed he and Cheatham were going to get the other half of the money that would be used to purchase drugs. Watson thought he was going along to keep Cheatham from getting "ripped off." Cheatham drove to an IHOP restaurant where they met Earl in the parking lot. Earl gave Cheatham a big "bulk of something." Cheatham then got a call on his cell phone from Cavazos. After the call, Cheatham and Watson met Cavazos. Cheatham told Cavazos that he had $16,000, the "other half." Cavazos then said he was "going to go get it" and told Cheatham and Watson to drive around. Cavazos left with the money; Watson thought Cavazos was going to get drugs. Watson and Cheatham waited for a call from Cavazos. First, Cavazos called and told Cheatham it was going to take him a while longer. Then Cheatham got another call from Cavazos and handed the phone to Watson. Cavazos told Watson that he "had gotten jacked for the money and that they had shot Alex." (Watson did not know Alex, but said he was someone Cavazos was supposed to get drugs from.) Cavazos sounded weak and scared. Watson and Cheatham drove to pick up Cavazos, who was outside a residence. His lip was "busted" and his shirt was torn. Cavazos told them he had gone to a house where he had been beaten, but was able to run away. Cheatham said they needed to tell Earl what had happened, so they went back to the IHOP to meet Earl.

At the IHOP, Earl got in the Cadillac with the three men, and they eventually drove to a City garage. Earl asked Cavazos what had happened, and Cavazos told him he had been jacked. Earl became angry and frustrated. The men got out of the car, and Earl told Cavazos he had better get Earl's money or his drugs or he would kill Cavazos and Watson. Earl told Cavazos he did not believe or trust him. Cavazos started making phone calls in an attempt to get someone to front him the drugs. Earl then asked Cavazos to show him where he had gotten jacked. The men drove through a neighborhood looking for the house, but could not find it. Cavazos could

2

not remember exactly where it was. Earl again threatened to kill Cavazos and Watson if they did not get his money or drugs. Earl began to periodically hit Cavazos in the face. He also tried to break Cavazos's neck.

Earl then said that they were going to pick up "his boy." They drove to a recording studio in Las Colinas and arrived sometime between nine and ten at night. They picked up [Petitioner], who was carrying a black bag.

Cavazos continued to make calls and eventually said he could get $4000 from someone named "Carlos." The men drove to Elrod's Cost Plus to meet Carlos. Carlos walked up to the driver's door of the Cadillac and handed Cheatham the money. The men left and drove to an alleyway. Earl was very angry. According to Watson, Earl later said he had recognized the money Cavazos got from Carlos as Earl's own money.

In the alleyway, Cheatham, [Petitioner], and Earl got out of the car. Eventually [Petitioner] came back to the car, told Cavazos "[epithet], you don't [expletive] with our money," and started to hit him. Then Earl dragged Cavazos out of the car and knocked him down. Cheatham, [Petitioner], and Earl all started beating Cavazos. Watson testified that Earl and [Petitioner] were the most aggressive. The beating continued for five to ten minutes, at which time, Cheatham, Earl, and [Petitioner] tied up Cavazos. Then Earl and [Petitioner] put him in the trunk of the Cadillac. Cheatham, [Petitioner], and Earl got back in the car with Watson. Earl said they were going to throw Cavazos and Watson off a bridge. When they stopped to do so, another car came and they left. Then they went to Cavazos's house to look for his car, but it was not there. Then Earl said, "let's burn this [epithet]." They drove to a 7-Eleven. Earl went in the store and returned with a plastic gas can he had purchased. Earl told Cheatham to find a place where he could take Cavazos and burn him. They drove around and eventually turned on a dirt road. When the car stopped, everyone but Watson got out. The men took Cavazos out of the trunk, and Earl and [Petitioner] took him to an empty lot. Watson saw the gas can in Earl's hand. Cheatham, [Petitioner], and Earl started beating Cavazos and telling him it was his last chance. Watson saw someone "spark a torch." That man dropped the torch on Cavazos and the flames shot up. Cavazos began screaming and running around. Watson testified that either Earl or [Petitioner] started the fire because they were big and stocky. (Watson testified that Cheatham is tall, thin, and not muscular.) Also, Earl and [Petitioner] were both wearing white T-shirts. When the fire started, all three men were standing near Cavazos. The three men then ran back to the car. [Petitioner] brought the gas can with him. Watson heard [Petitioner] say, "that was easy." They drove away, and eventually, a police car pulled them over. When the officer got out of his car and started walking to the Cadillac, Cheatham drove away. The police followed them until Cheatham wrecked the car. Cheatham, Earl, and [Petitioner] ran away. Watson stayed and told an officer what had happened.

Katherine Long, a forensic [serologist], testified that she found human blood stains on several items of [Petitioner's] clothing. Long also identified the presence of human blood on Earl's shoe and pants. Carolyn Van Winkle performed DNA testing on these items. She testified that the DNA present on those items was consistent with Cavazos's blood sample.[1] James Adams, a trace evidence analyst, testified that gasoline was present on [Petitioner's] black bag and on a shoe belonging to Earl.

Earl testified on his own behalf. He testified that on May 13, 1998, he lived in Oklahoma and was in Dallas with [Petitioner] because they had a recording session. Earl dropped [Petitioner] off at the recording studio and then contacted Cheatham, his fiancee's cousin, because he wanted to purchase drugs from friends of Cheatham's. Earl met Cheatham and Watson at an IHOP. Cheatham told Earl that Watson would be handling the drug transaction. Earl noticed that Watson had a gun; Watson told Earl he carried it to keep from getting jacked. Earl testified that he gave Cheatham $4000. Cheatham and Watson left to go get drugs for Earl.

Later, Earl got a call from Cheatham saying something had gone wrong. Earl met Cheatham and Watson back at the IHOP. Earl got in the car with them. Cavazos was also in the car. He was bleeding. Watson told Earl that Cavazos had been jacked. Earl told Watson he wanted his money back and Watson agreed. Earl said eventually he and Cheatham went to the studio to pick up [Petitioner], while Cavazos and Watson went to get Earl's money. Earl stopped at a gas station to fill up his car with gas and, in doing so, spilled gas on himself. At midnight, they met Watson back at the IHOP. Watson did not have the money, but Cheatham, [Petitioner], and Earl got in the car with him to go get it. Cavazos was not present. They met two men who gave money to Watson. Watson gave the money to Cheatham, who gave it to Earl. On the way back to the IHOP, they were stopped by police. When the police asked Cheatham to get out of the car, Cheatham, who had been drinking, drove away. A high-speed chase ensued, and the car eventually crashed. Earl testified he did not have anything to do with Cavazos's death.

*Else v. State*, No. 5-99-238-CR, 2000 WL 566962, at *1-3 (Tex. App.—Dallas Apr. 28, 2000, pet.

ref'd) (not designated for publication).

Petitioner was indicted, and he and Earl were tried jointly for the capital murder of Cavazos

while in the course of kidnapping. (State Habeas R. at 151; 2 R.R. at 3.) A jury found them both

---

[1] Specifically, Van Winkle testified that the probability of selecting an individual at random having such markers is about one in 40,000 Caucasians, one in 250,000 African-Americans, and one in 64,000 Hispanics.

guilty of capital murder, and the trial court automatically sentenced them to life confinement.[2] (State Habeas R. at 156; 3 R.R. at 16; 10 R.R. at 29.) TEX. CODE CRIM. PROC. ANN. art. 37.071, § 1 (Vernon Supp. 2004-05). *See generally Earl v. Dretke*, No. 3:02-CV-036-L, 2004 WL 2977605 (N.D. Tex. Dec. 15, 2004), *accepted*, 2004 WL 3029852 (N.D. Tex. Dec. 30, 2004).

The Dallas Court of Appeals affirmed the trial court's judgment, and the Texas Court of Criminal Appeals refused Petitioner's pro se petition for discretionary review. *Else*, No. 5-99-238-CR, 2000 WL 566962, at *7. Petitioner filed a state application for habeas corpus relief, challenging his conviction, which the Court of Criminal Appeals denied without written order. *Ex parte Else*, No. 51,286-01 (Tex. Crim. App. Apr. 17, 2002) (not designated for publication). Petitioner filed his federal petition for writ of habeas corpus in the United States District Court for the Northern District of Texas, Dallas Division, on June 4, 2002. *See Spotville v. Cain*, 149 F.3d 374, 377 (5th Cir. 1998) (per curiam) (holding, under prison mailbox rule, pro se habeas petition filed when papers delivered to prison authorities for mailing).

    **D. Issues:** Petitioner argues his conviction is unconstitutional because:

1.     the evidence is legally insufficient to support his conviction;

2.     the State elicited perjury from a witness;

3.     the State violated *Brady*;

4.     the State destroyed evidence,

5.     the trial court wrongfully admitted the gas can into evidence;

6.     the trial court erroneously admitted autopsy pictures of Cavazos into evidence;

---

[2] Cheatham, who was tried separately from Earl and Petitioner, was also found guilty of capital murder and sentenced to life confinement. *See Cheatham v. Dretke*, No. 3:02-CV-1547-H, 2005 WL 415440 (N.D. Tex. Feb. 17, 2005).

7.      the trial court failed to quash the indictment;

8.      the jury charge was erroneous; and

9.      trial counsel was ineffective.

**E. Exhaustion:**   Dretke believes Petitioner has sufficiently exhausted available state remedies on all issues presented and, thus, does not move for dismissal on this ground.

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody under a state court judgment shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court.  28 U.S.C. § 2254(d).  A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001).  A state court decision will be an unreasonable application of clearly established precedent if it correctly identifies the applicable rule but applies it objectively unreasonably to the facts of the case.  *Williams*, 529 U.S. at 407-08; *see also Neal v. Puckett*, 286 F.3d 230, 236, 244-46 (5th Cir. 2002) (en banc per curiam), *cert. denied*, 537 U.S. 1104 (2003).

Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct.  The applicant has the burden of rebutting this presumption of correctness

6

by clear and convincing evidence. *Hill*, 210 F.3d at 485. When the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, it is an adjudication on the merits, which is entitled to this presumption. *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

### III. SUFFICIENCY OF THE EVIDENCE

Petitioner argues that the evidence is legally insufficient to support his conviction because there was no evidence to show that (1) Petitioner was responsible for setting the fire either as a primary actor or as a party or (2) Cavazos's murder was committed during the course of a kidnapping. (Federal Pet. at 10-14; Pet'r Mem. at 1-14.) To review the legal sufficiency of the evidence, a federal court must consider whether, viewing all the evidence "in the light most favorable to the prosecution, any rational trier of fact could have found the existence of facts necessary to establish the essential elements of the offense beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). All credibility choices and conflicting inferences are to be resolved in favor of the fact-finder. *United States v. Cyprian*, 197 F.3d 736, 740 (5th Cir. 1999), *cert. denied*, 531 U.S. 822 (2000). This court must determine if the evidence is constitutionally sufficient to support the conviction, i.e., whether the evidence satisfied the "substantive elements of the criminal offense as defined by state law." *Brown v. Collins*, 937 F.2d 175, 181 (5th Cir. 1991) (quoting *Jackson*, 443 U.S. at 324 n.16). This court need not find that the evidence excluded every reasonable hypothesis of innocence or was wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could have found that the evidence, whether direct or circumstantial, and all reasonable inferences drawn from it established guilt beyond a reasonable doubt. *United States v. Salazar*, 958 F.2d 1285, 1294 (5th Cir.), *cert. denied*, 506 U.S. 863 (1992).

This claim was raised in Petitioner's direct appeal, petition for discretionary review, and state habeas application. The claim was rejected by the Fifth District Court of Appeals and the Court of Criminal Appeals on direct review. *Weekley*, No. 5-99-238-CR, 2000 WL 566962, at *3-5. On state habeas review, the courts found that the conclusion reached on direct appeal was correct and binding:

> In the direct appeal of [Petitioner's] conviction to the Court of Appeals, [Petitioner] challenged the sufficiency of the evidence upon which [Petitioner's] conviction was based. The Court of Appeals in its written opinion affirming [Petitioner's] conviction expressly found said allegation to be without merit. . . . [Petitioner] has not, in the instant Application for Writ of Habeas Corpus, presented this Court with any new facts or citations of authority which would require a reconsideration of this issue. This Court concurs with and is bound by the prior opinion of the Court of Appeals with regard to the disposition of [Petitioner's] allegation regarding the sufficiency of the evidence. (State Habeas R. at 125-26.)

Petitioner has not overcome the presumption of correctness, which applies to these factual findings, with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Indeed, under the law of parties in Texas, Petitioner is criminally responsible for the offense if he, with the intent to promote or assist the commission of the offense, solicited, encouraged, directed, aided, or attempted to aid Cheatham and Earl. TEX. PENAL CODE ANN. § 7.02(a)(2) (Vernon 2003). The evidence is sufficient if Petitioner was physically present at the scene of the offense and encouraged its commission either by words or other agreement. *Mayfield v. State*, 716 S.W.2d 509, 514 (Tex. Crim. App. 1986). As recounted by the court of appeals, the following evidence would allow a rational jury to conclude that, if Petitioner did not personally set the fire, he encouraged, aided, or directed Cheatham or Earl to do so:

> When [Petitioner] and the others stopped in an alleyway, [Petitioner] told Cavazos "[epithet], you don't [expletive] with our money," and began to hit him. After Earl dragged Cavazos out of the car, [Petitioner] participated in beating him, tying him up, and putting him in the trunk. After Earl came up with the idea to burn Cavazos, [Petitioner] and Earl took Cavazos out of the trunk and to the empty lot where the

murder occurred. When the fire started, Cheatham, [Petitioner], and Earl were all near Cavazos. Watson testified that either [Petitioner] or Earl set the fire. [Petitioner] ran back to the car carrying the gas can. Watson heard him say, "that was easy." Blood consistent with Cavazos's was found on clothing [Petitioner] was wearing that night, and gasoline was present on his black bag.

*Else*, No. 5-99-238-CR, 2000 WL 566962, at * 4; *see, e.g., Moreno Denoso v. State*, No. 13-99-809-CR, 2005 WL 247427, at *2 (Tex. App.—Corpus Christi Feb. 3, 2005, no pet. h.) (holding evidence was legally sufficient to support defendant's conviction as a party to murder because evidence showed that defendant met with three other men and discussed killing victim, traveled with the others to the murder site the afternoon before the crime, was present during the murder, helped dispose of victim's body, and concealed car used to transport victim after the murder); *Murillo v. State*, 839 S.W.2d 485, 488-92 (Tex. App.—El Paso 1992, no pet.) (holding circumstantial evidence sufficient to support murder conviction because defendant was present at murder scene, fled from scene, encouraged commission of offense by soliciting assistance of others as he ran toward victim's vehicle, and understood common design to commit offense).

To establish kidnapping, the State had to prove that Petitioner intentionally or knowingly abducted Cavazos. TEX. PENAL CODE ANN. § 20.03(a) (Vernon 2003). Abduction is statutorily defined as to restrain a person with intent to prevent his liberation by either (1) secreting or holding him in a place where he is not likely to be found or (2) using or threatening to use deadly force. *Id.* § 20.01(2) (Vernon Supp. 2004-05). Again, the evidence recounted by the court of appeals supports Petitioner's capital-murder conviction:

> [W]hen the Cadillac stopped in an alleyway, [Petitioner], Cheatham, and Earl beat Cavazos. Then [Petitioner] helped tie up Cavazos, and [Petitioner] and Earl put him in the trunk of the car. Cheatham, Earl, and [Petitioner] drove around with Cavazos in the trunk, eventually stopping at an empty lot. They took Cavazos out of the trunk, and [Petitioner] and Earl took him to the lot where he was burned.

*Else*, No. 5-99-238-CR, 2000 WL 566962, at *5; *see, e.g., Brooks v. State*, 990 S.W.2d 278, 280-84 (Tex. Crim. App. 1999); *Mason v. State*, 905 S.W.2d 570, 575 (Tex. Crim. App. 1995); *Hernandez v. State*, 10 S.W.3d 812, 823-24 (Tex. App.—Beaumont 2000, pet. ref'd).

The evidence was  legally sufficient to prove Petitioner was guilty of capital murder. Petitioner has failed to carry his heavy burden to show that the state court determinations of this issue were based on unreasonable determinations of the facts in light of the evidence presented in the state court proceeding or that such decisions were contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court.  28 U.S.C. § 2254(d).  Accordingly, Petitioner is entitled to no federal habeas relief on his claim that the evidence is legally insufficient to support his conviction.

## IV. PROSECUTORIAL MISCONDUCT

Petitioner argues that the State committed prosecutorial misconduct by: (1) eliciting perjurious testimony, (2) violating *Brady*, and (3) failing to preserve favorable defensive evidence. These claims were raised and rejected on state habeas review.  (State Habeas R. at 124-25.)

### A.      Perjury

Petitioner argues that the State committed misconduct by eliciting and failing to correct known perjury from State's witnesses that Watson told police where Cavazos had been left. Petitioner asserts that this testimony added weight to Watson's testimony because Watson was seen as Cavazos's "savior", notwithstanding the fact that someone else was at the scene and alerted police to Cavazos's location.  (Federal Pet. at 15; Pet'r Mem. at 14-17.)  The prosecutor stated in an affidavit in response to Petitioner's state habeas application that he did not elicit perjury regarding who directed the police to Cavazos:

I have also reviewed my file and the trial Statement of Facts in each of the cases tried concerning the witness Eric Watson talking about the location where the victim was burned. The victim in this case was found by paramedics responding to the 911 call from the passerby. The lead paramedic testified at each trial. At roughly the same time that the victim was being found, the three defendants were being chased by Irving police, culminating in their car wrecking out and the witness Eric Watson being found in the backseat. Eric Watson told Irving officer Conde that the Defendants had just killed his friend by setting him on fire off Red Bird Lane. That was where the paramedics found him, thus corroborating what Eric Watson said. Eric Watson was responsible for tying in the three Defendants with the victim found on Red Bird Lane.

It was a poorly-worded question that I asked, i.e., that after Eric Watson gave the information about the victim burned off Red Bird Lane "Later, was the victim located there?" [5 R.R. 40-41.] I never argued in any of these cases that Eric Watson was responsible for the victim being found, consistently arguing pursuant to the evidence that Eric Watson tied the Defendants to the victim off Red Bird Lane.

(State Habeas R. at 111.) The trial court found this affidavit to be true and credited the prosecutor's statements in rejecting Petitioner's claim. (*Id.* at 124.) There is no evidence that any testimony regarding how Cavazos was found was perjurious or that the State knew it was false, which defeats a due-process claim. *May v. Collins*, 955 F.2d 299, 315 (5th Cir.), *cert. denied*, 504 U.S. 901 (1992). Contradictory testimony from witnesses does not, standing alone, establish perjury. *Kutzner v. Johnson*, 242 F.3d 605, 609 (5th Cir. 2001); *Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990). Petitioner has failed to overcome the presumption of correctness of the state courts factual findings; thus, Petitioner has not shown that the State elicited perjury. 28 U.S.C. § 2254(e)(1).

**B.     *Brady* Violation**

Petitioner asserts that the State violated *Brady* when it failed to disclose that an anonymous 911 call, and not Watson's information, resulted in locating Cavazos. (Federal Pet. at 16; Pet'r Mem. at 17-20.) A petitioner's due-process rights are violated when the State suppresses impeachment or exculpatory evidence where the evidence is material either to guilt or punishment,

irrespective of the good faith or bad faith of the State. *Strickler v. Greene*, 527 U.S. 263, 280 (1999); *Brady v. Maryland*, 373 U.S. 83, 87 (1963). To establish a *Brady* violation, Petitioner must prove that: (1) the State suppressed or withheld evidence (2) that was favorable and (3) material to guilt or punishment. *Moore v. Illinois*, 408 U.S. 786, 794-95 (1972); *Vega v. Johnson*, 149 F.3d 354, 363 (5th Cir.1998), *cert. denied,* 525 U.S. 1119 (1999). Evidence is not considered suppressed if the defendant knew or should have known of the facts of any exculpatory evidence. *Lawrence v. Lensing*, 42 F.3d 255, 257 (5th Cir. 1994); *Blackmon v. Scott*, 22 F.3d 560, 564-65 (5th Cir.), *cert. denied*, 513 U.S. 1060 (1994). As shown by the affidavits submitted by the prosecutor and defense counsel during the state habeas proceedings, the State disclosed the existence of the 911 call, and defense counsel was aware that Cavazos was discovered as a result of an anonymous 911 call. (State Habeas R. at 110-11, 128.) Petitioner has failed to show that any of the *Brady* requirements were violated.

**C.      Destruction of 911 Tape**

Petitioner contends that the State committed prosecutorial misconduct and violated his due-process rights by failing to preserve the 911 tape, which might have produced other suspects in Cavazos's murder. (Federal Pet. at 16; Pet'r Mem. at 21-23.) Due process requires the State to preserve evidence that meets the standard of "constitutional materiality," or evidence that possesses both "an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta*, 467 U.S. 479, 489 (1984). Unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process. *Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988).

On state habeas review, the prosecutor stated that the 911 call was untraceable and "[p]reserving the 911 tape would have done nothing to identi[f]y the caller" who was merely a "passerby." (State Habeas R. at 111.) Further, he stated that the 911 call "never did become significant in any of the cases tried against the Defendants." (*Id.*) Petitioner's allegation that the 911 tape *might have* proved exculpatory is insufficient to show materiality or a due-process violation. *Hebert v. State*, 836 S.W.2d 252, 254 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd); *Gamboa v. State*, 774 S.W.2d 111, 112 (Tex. App.—Fort Worth 1989, pet. ref'd). Petitioner has failed to overcome the presumption of correctness of the findings that the 911 tape was not obviously exculpatory before it was destroyed. 28 U.S.C. § 2254(e)(1).

## V. TRIAL COURT ABUSE OF DISCRETION

Petitioner next argues that the trial court abused its discretion by admitting the gas can and autopsy pictures of Cavazos into evidence. (Federal Pet. at 21, 27; Pet'r Mem. at 36-37.) In habeas actions, federal courts do not sit to review the mere admissibility of evidence under state law. *Little v. Johnson*, 162 F.3d 855, 862 (5th Cir. 1998), *cert. denied*, 526 U.S. 1118 (1999). However, state courts' evidentiary rulings warrant habeas relief when errors are so extreme that they constitute a denial of fundamental fairness under the Due Process Clause. *Id.* In other words, habeas relief is warranted only when erroneous admission or exclusion played a crucial, critical, and highly significant role in the trial. *Pemberton v. Collins*, 991 F.2d 1218, 1227 (5th Cir.), *cert. denied*, 510 U.S. 1025 (1993); *Skillern v. Estelle*, 720 F.2d 839, 852 (5th Cir. 1983).

Petitioner's argument against admission of the gas can focuses on gaps in the chain of custody; this argument goes to the weight of the evidence, however, and does not preclude its admission. *Lagrone v. State*, 942 S.W.2d 602, 617 (Tex. Crim. App.), *cert. denied*, 522 U.S. 917

(1997). Because the gas can was not erroneously admitted, Petitioner cannot show a due-process violation. Likewise, the autopsy photos were not erroneously admitted because they illustrated the medical examiner's testimony. *Emery v. State*, 881 S.W.2d 702, 710-711 (Tex. Crim. App. 1994); *Rogers v. State*, 774 S.W.2d 247, 258 (Tex. Crim. App.), *cert. denied*, 493 U.S. 984 (1989). *Long v. State*, 681 S.W.2d 840, 843-844 (Tex. App.—Houston [14th Dist.] 1984, pet. ref'd). Thus, Petitioner's due-process arguments fail.

Petitioner additionally asserts that the trial court abused its discretion when it failed to quash the reindictment because no new evidence was presented to the grand jury to secure the reindictment for murder in the course of a kidnapping after he was originally indicted for murder in the course of robbery. (Federal Pet. at 22-24; Pet'r Mem. at 38-40.) In habeas actions, federal courts do not sit to review mere errors under state law. *Dickerson v. Guste*, 932 F.2d 1142, 1145 (5th Cir.), *cert. denied*, 502 U.S. 875 (1991). At its core, Petitioner's claim raises a question regarding Texas law. *Yohey v. Collins*, 985 F.2d 222, 229 (5th Cir. 1993); *cf. Wilder v. Cockrell*, 274 F.3d 255, 260 (5th Cir. 2001) (holding passing reference to Constitution does not exhaust constitutional claim). Thus, because the indictment was sufficient under Texas law to confer jurisdiction on the trial court, Petitioner's indictment complaints provide no basis for federal habeas corpus relief. *Williams v. Collins*, 16 F.3d 626, 637 (5th Cir.), *cert. denied*, 512 U.S. 1289 (1994); *McKay v. Collins*, 12 F.3d 66, 68-69 (5th Cir.), *cert. denied*, 513 U.S. 854 (1994); *Yohey*, 985 F.2d at 229.

## VI. JURY CHARGE

Petitioner argues that the trial court erred in charging the jury under the law of parties because it allowed the jury to convict Petitioner without a finding that either Petitioner, Earl, or Cheatham was the primary actor. (Federal Pet. at 25; Pet'r Mem. at 40-42.) The state courts rejected this

argument on state habeas corpus review and found that the jury charge "adequately instructed the jury as to the facts and law which should be considered by the jury in evaluating [Petitioner's] guilt." (State Habeas R. at 126.)  Petitioner has failed to rebut the presumption of correctness as to the state courts' adjudication of the claim.   28 U.S.C. § 2254(d), (e)(1).   Moreover, the claim does not implicate a federal constitutional right.  *See Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991) (holding incorrect instruction under state law is not a basis for habeas relief).  This court must defer to the state courts on matters of state statutory interpretation.  *Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995) (per curiam); *Fierro v. Lynaugh*, 879 F.2d 1276, 1278 (5th Cir. 1989), *cert. denied*, 494 U.S. 941 (1990).

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel. U.S. CONST. amend. VI.   A claim of ineffective assistance of counsel is measured under a two-pronged standard by which a petitioner must show (1) that counsel's performance was deficient in that the errors made were so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment and (2) prejudice by demonstrating that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984).  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  *Id.* at 694.  The court need not address both prongs of the *Strickland* standard if the complainant has made an insufficient showing on one.  *Id.* at 697.

In assessing whether a particular counsel's performance was constitutionally deficient, courts indulge a strong presumption that counsel's conduct falls within the wide range of reasonable

assistance.  *Id.* at 689.  In general, scrutiny of an attorney's performance is highly deferential, and reviewing courts will not second-guess strategic decisions; rather, the attorney's performance is evaluated in light of all the circumstances as they existed at the time of the conduct, and is presumed to have been adequate.  *Id.* at 689-90.  Strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable.  *Id.* at 690-91.

Petitioner's complaints about counsel were reviewed and rejected during state collateral review proceedings.  (State Habeas R. at 124-25.)  A claim of ineffective assistance is a mixed question of law and fact.  *Id.* at 698.  Thus, a federal habeas court cannot grant relief unless the state court's rejection of the claim involved an unreasonable application of the law to the facts.  28 U.S.C. § 2254(d).  Petitioner asserts that trial counsel was constitutionally ineffective when he:

1.  labored under a conflict of interest;

2.  failed to investigate the 911 call and submit evidence that Cavazos was not discovered based on Watson's information;

3.  did not object to statements that Petitioner, Earl, and Cheatham could be convicted solely as a party;

4.  did not voir dire the jury regarding the law of parties;

5.  in response to the jury's note, failed to request that testimony be read back to the jury; and

6.  did not request an accomplice-witness instruction regarding Watson's testimony.

First, Petitioner cannot meet the prejudice requirement of the *Strickland* test.  As discussed above in section III., the evidence establishes Petitioner's guilt; thus, he cannot show that the result of the trial would have been different had counsel acted differently.  *Johnson v. Cockrell*, 301 F.3d 234, 239 (5th Cir. 2002), *cert. denied*, 538 U.S. 1001 (2003); *Creel v. Johnson*, 162 F.3d 385, 396

(5th Cir. 1998), *cert. denied*, 526 U.S. 1148 (1999).  Second, Petitioner has failed to carry his burden

of proof on his claims.  Both the state trial court and the Texas Court of Criminal Appeals considered

and rejected Petitioner's ineffective assistance claims.  (State Habeas R. at 124-25.)  An independent

review of his claims in conjunction with the state court records does not indicate that the state courts'

decision was contrary to or involved an unreasonable application of *Strickland*, or that it was based

on an unreasonable determination of the facts as presented in the state court proceedings.  28 U.S.C.

§ 2254(d).  Third, Petitioner's arguments fall short of satisfying the deficient-performance element

of *Strickland*, i.e., that counsel's alleged errors were so serious that he was not functioning as the

counsel guaranteed by the Sixth Amendment.

## A.     Conflict of Interest

Petitioner first argues that a conflict of interest arose because trial counsel represented

Herbert Ochoa, who had participated in the robbery of Cavazos.  (Federal Pet. at 17; Pet'r Mem. at

24-26.)  To show an unconstitutional conflict of interest, Petitioner must show that an actual conflict

adversely affected his lawyer's performance and that counsel actively represented conflicting

interests.  *Cuyler v. Sullivan*, 446 U.S. 335, 348-50 (1980).  On state habeas review, counsel averred

that there was no conflict and that Petitioner was aware of his representation of Ochoa:

> [Petitioner] was fully aware prior to trial that I represented Herbert Ochoa.  The State
> theorized that perhaps Mr. Ochoa's friend Ventura robbed [Cavazos] of his money
> which later caused **[Petitioner] and his co-defendants** to kill [Cavazos].  If
> anything, information I might have received about Mr. Ochoa would have
> benefit[t]ed [Petitioner].  However Mr. Ochoa and Mr. Ventura were not mentioned
> by the State or Defense in the trial.  There was no conflict to [Petitioner].  (State
> Habeas R. at 128.)

These factual statements were credited by the state habeas courts (*id.* at 124-25) and are presumed

correct.  28 U.S.C. § 2254(e)(1).  Thus, Petitioner has failed to meet his burden of proof under

*Cuyler*, and counsel was not deficient.

**B.     Failure to Investigate 911 Call**

Petitioner argues counsel should have investigated the 911 call and admitted evidence that Cavazos was not discovered as a result of Watson's information.  Counsel equivocally stated in his state habeas affidavit that counsel for either Earl or Cheatham obtained the 911 tape.  (*Id.* at 128.) The prosecutor stated that the "911 call came in from a passerby apparently using a cell phone [and] no phone number could be traced."  (*Id.* at 110.)  Based on these affidavits, the state habeas courts concluded that counsel was not ineffective.  (State Habeas R. at 124-25.)  Petitioner has failed to overcome the presumption of correctness of these credibility findings.  28 U.S.C. § 2254(e)(1). Further, this conclusion is not contrary to federal law and was not an unreasonable determination of the facts in light of the evidence.  *Id.* § 2254(d).  In order to establish that counsel was ineffective due to a failure to investigate the case, Petitioner must do more than merely allege a failure to investigate—he must state with specificity what the investigation would have revealed, what specific evidence would have been disclosed, and how the evidence would have altered the outcome of the trial.  *Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994);  *Rose v. Johnson*, 141 F. Supp. 2d 661, 691 (S.D. Tex. 2001).  Petitioner fails to meet his burden of specificity on this claim; thus, he is not entitled to relief.  *Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983) (per curiam).

**C.     Failure to Object to State's Argument**

Petitioner contends counsel failed to object to the State's arguments about the law of parties. (Federal Pet. at 18-19; Pet'r Mem. at 29-31.)  The State's explanations that Petitioner could be convicted as a party merely on evidence that either he, Earl, or Cheatham was the primary actor were correct statements of the law.  TEX. PENAL CODE ANN. §§ 7.01-.02 (Vernon 2003).  Thus, any

18

objection by counsel to the State's correct statements of the law would have been futile.  *See Carter v. Johnson*, 131 F.3d 452, 464 (5th Cir. 1997) (holding counsel not deficient for failing to request competency hearing where there was no indication of incompetency), *cert. denied*, 523 U.S. 1099 (1998); *Lauti v. Johnson*, 102 F.3d 166, 170 (5th Cir. 1996) (holding counsel not deficient for failing to object to proper jury instruction), *cert. denied*, 521 U.S. 1126 (1997); *Marshall v. Cabana*, 835 F.2d 1101, 1103 (5th Cir. 1988) (per curiam) (holding counsel not deficient for failing to make meritless argument); *Smith v. Maggio*, 696 F.2d 365, 367 (5th Cir.) (holding counsel not deficient for failing to investigate when investigation was, in fact, conducted), *cert. denied*, 464 U.S. 831 (1983).

**D.      Failure to Voir Dire on Law of Parties**

Petitioner argues that counsel should have conducted jury voir dire on the law of parties. (Federal Pet. at 19; Pet'r Mem. at 32-33.)  The State and the trial court adequately explained the law of parties to the panel (3 R.R. at 28-34, 109-10), and any further questioning would have been duplicative.  Counsel was not deficient.  *Cf. Smith*, 696 F.2d at 367.

**E.      Failure to Request That Testimony Be Read to Jury**

Petitioner argues that counsel should have requested that Officer Chism's testimony be read to the jury.  (Federal Pet. at 20; Pet'r Mem. at 34-35.)  During deliberations, the jury asked for Officer Curtis Chism's testimony regarding "what day and time pictures of Lombardy[3] (crime location) were taken." (10 R.R. at 6.)  The trial court instead provided Watson's testimony regarding the pictures to the jury:

---

[3]Lombardy was the alleyway where Earl, Cheatham, and Petitioner dragged Cavazos out of the car, beat him, and then tied him up to put him in the trunk.

> Review of the testimony indicates that those pictures were offered through the
> witness Watson, not Chism, and that Chism did not testify concerning those
> particular pictures. So we have provided the testimony of Watson that relates to the
> pictures; and both sides have agreed that, with explanation, that much should be read
> to the jury. (*Id.* at 3.)

Officer Chism did not testify when the pictures were taken. (6 R.R. at 183-84.) Thus, any request

to have Officer Chism's testimony, which did not respond to the jury's question, read to the jury

would have been futile. *Marshall*, 835 F.2d at 1103. Further, there is no showing that the failure

to have Officer Chism's testimony read affected the jury's verdict.

## F.    Failure to Request Instruction

Petitioner asserts that counsel should have requested an accomplice-witness instruction based

on Watson's testimony. (Federal Pet. at 26; Pet'r Mem. at 43-45.) On direct appeal, the state court

of appeals held that there was no evidence to suggest that Watson was an accomplice; thus, any

request for an accomplice-witness instruction would have been meritless. *Else*, No. 5-99-238-CR,

2000 WL 566962, at *6. Counsel was not deficient. *Marshall*, 835 F.2d at 1103.

## VI. SUMMARY

Petitioner is lawfully restrained because he has failed to prove that he has been denied a

constitutionally protected interest. Accordingly, the state courts' determination that Petitioner was

not entitled to relief is not contrary to or does not involve an unreasonable application of clearly

established federal law and is not based on an unreasonable determination of the facts in light of the

evidence presented in the state court proceedings.

## VII. EVIDENTIARY HEARING

Upon review of the pleadings filed and the proceedings held in state court as reflected in the

state-court records, an evidentiary hearing appears unnecessary. RULES GOVERNING SECTION 2254

CASES 8(a).

## VIII. RECOMMENDATION

For the foregoing reasons, the undersigned Magistrate Judge **RECOMMENDS** that the

Court **DENY** the request for habeas corpus relief brought under 28 U.S.C. § 2254.

SIGNED this 14th day of March, 2005.


*Irma Carrillo Ramirez*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE


## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them. Under 28 U.S. C. § 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must file and serve written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. Failure to file written objection to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc); *Carter v. Collins*, 918 F.2d 1198, 1203 (5th Cir. 1990).


*Irma Carrillo Ramirez*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE